**PIEDMONT AVIATION, INC., a corporation, Appellee,**

v.

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, an unincorporated association, Appellant.**

No. 13824.

United States Court of Appeals
Fourth Circuit.

Argued Aug. 27, 1969.

Decided Sept. 29, 1969.

634

Robert S. Savelson, New York City, (Frank M. Aiello, Lawrence Rosenstock, Cohen & Weiss, New York City, Charles T. Boyd, York, Boyd & Flynn, Greensboro, N. C., on brief) for appellant.

J. W. Alexander, Jr., Charlotte, N. C. (Brown Hill Boswell, Ernest W. Machen, Jr., and Blakeney, Alexander & Machen, Charlotte, N. C., on brief) for appellee.

W. A. Dickinson, Roanoke, Va., (Hazlegrove, Carr, Dickinson, Smith & Rea,

Roanoke, Va., and J. N. Kincanon, City Atty., on brief) for the City of Roanoke, amicus curiae.

Before WINTER, CRAVEN, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Against a background of charges and countercharges that each side had failed to utilize the conciliatory procedures of the Railway Labor Act, the district court, on motion of Piedmont Aviation, Inc., granted an interlocutory injunction restraining its pilots from continuing a strike. With modifications to the order which are designed to maintain conditions that existed before the strike, we affirm the district court.

The airline and the union representing the pilots, Air Line Pilots Association, International, executed a collective bargaining agreement on July 24, 1968 that settled all terms and conditions of employment except the size of the crew flying Boeing 737 jets. The union, trying to implement a bylaw it adopted in 1966, insisted on three-man crews.[1] The company resisted, relying upon the Federal Aviation Administration's 1967 certification of the B-737 for operation by two-man crews.

After a number of fruitless bargaining sessions, the parties agreed to operate with three-man crews pending arbitration of a similar controversy with United Airlines. When the results of this arbitration failed to resolve the impasse at Piedmont, the parties continued three-man operation and reopened bargaining negotiations. Again the parties failed to reach agreement, and mediation was unsuccessful. Finally, on June 6, 1969, the National Mediation Board proffered arbitration. The company refused, and the union did not respond.

The company then announced that it would fly the B-737 with two-man crews, and the union sought, but was denied, an interlocutory injunction against this in the United States District Court for the District of Columbia.[2] When the company attempted to operate with two pilots on July 21, 1969, the union struck, and two weeks later the company applied for an interlocutory injunction against the strike. Both parties claim they are engaged in a major dispute under the Railway Labor Act.[3] The company, seeking to avoid application of the Norris-LaGuardia Act, contends that the union violated the Railway Labor Act by failing to bargain in good faith. The union, in addition to denying this allegation, asserts that the company's refusal to arbitrate bars relief. The district court granted a preliminary injunction against the strike; we denied a stay and accelerated this interlocutory appeal.

The parties recognize that they are subject to the Railway Labor Act. 45 U.S.C. §§ 181 and 182. The heart of this Act, as Mr. Justice Harlan observed in Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 377, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969), is the duty imposed upon labor and management to exert every reasonable effort to make collective bargaining agreements and to settle their disputes so commerce will not be interrupted. 45 U.S.C. § 152, First. The Act calls upon the parties to decide their disputes, if possible, by negotiations. 45 U.S.C. § 152, Second. If the parties' conferences fail to solve their differences, the Act prescribes mediation,

1. The bylaw provided in part: "All future turbine-powered transport aircraft certificated after the adoption of this policy * * * will be manned by a minimum crew of three pilots * * *." The union's board of directors, by two-thirds vote, can exempt an aircraft from this policy.

2. Ruby v. Piedmont Aviation, Inc., No. 1820-69 (D.D.C. Aug. 1, 1969).

3. Major disputes under the Railway Labor Act arise over the formation or change of collective bargaining agreements. Minor disputes relate to the meaning or proper application of existing agreements. See Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945).

and if this is unsuccessful, the mediator must endeavor to induce the parties to submit their controversy to voluntary arbitration. 45 U.S.C. § 155, First.[4] Until the procedures required by the Act have been met, neither party can unilaterally change the working conditions or practices in effect prior to the time the dispute arose. 45 U.S.C. §§ 152, Seventh; 155, First; and 156.

■■ The Norris-LaGuardia Act, 29 U.S.C. §§ 101–115,[5] denies a federal court jurisdiction to enjoin a peaceful strike. We conclude, however, that the Norris-LaGuardia Act does not bar an interlocutory injunction in this case. In Brotherhood of R.R. Trainmen v. Chicago R. & I. R.R., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957), the Court found that the purposes of the Norris-LaGuardia Act and the Railway Labor Act were reconcilable, and it held that there must be an accommodation of the Acts so that the purpose of each is preserved. There the Court sanctioned an injunction against a strike over a minor dispute that was pending before the National Railroad Adjustment Board. Although the Railway Labor Act makes no provision for submission of major disputes to the Adjustment Board, the principles underlying the case are applicable here. Whether the dispute be major or minor, the Act requires the parties to confer and negotiate in good faith. Restraining the parties from self-help, through strikes or otherwise, until they have complied with the duty to bargain in good faith vindicates the congressional purpose of providing machinery to prevent strikes without creating an irreconcilable conflict with the Norris-LaGuardia Act. Restraint conditioned in this respect does not deny the right to strike over a major dispute; but it delays this right until the union satisfies the mandate of the Railway Labor Act.[6] Order of Railroad Telegraphers v. Chicago & N.W. Ry., 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774 (1960), which denied an injunction against a strike over a major dispute, is not controlling here. There the Court expressly noted [362 U.S. at 339, 80 S.Ct. 761] that the union's efforts to negotiate complied with the Act.

■ On this appeal, aside from determining whether the district court had jurisdiction, our consideration is limited to deciding whether it abused its dis-

---

4. Provision is also made for further proceedings not applicable to this case. 45 U.S.C. § 160.

5. Section 4 of the Norris-LaGuardia Act [29 U.S.C. § 104] provides in part:

"No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute * * * from doing, whether singly or in concert, any of the following acts:

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

\* \* \* \* \* \*

"(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;

"(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

"(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified * * *."

6. *Accord*, Brotherhood of R. R. Trainmen v. Akron & B. B. R. R., 128 U.S.App.D.C. 59, 385 F.2d 581, 613, cert. denied, 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed.2d 983 (1968); Brotherhood of Locomotive Firemen & Enginemen v. Bangor & A. R. R., 127 U.S.App.D.C. 23, 380 F.2d 570, 583, cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 461 (1967); Manning v. American Airlines, 329 F.2d 32, 34 (2d Cir.), cert. denied, 379 U.S. 817, 85 S.Ct. 33, 13 L.Ed.2d 29 (1964); Chicago R. I. & P. R. R. v. Switchmen's Union, 292 F. 2d 61, 71 (2d Cir.1961), cert. denied, 370 U.S. 936, 82 S.Ct. 1578, 8 L.Ed.2d 806 (1962); Norfolk & P. B. L. R. R. v. Brotherhood of R. R. Trainmen, 248 F.2d 34, 45 (4th Cir. 1957), cert. denied, 355 U.S. 914, 78 S.Ct. 343, 2 L.Ed.2d 274 (1958); Pennsylvania R. R. v. Transport Workers, 202 F.Supp. 134, 137 (E.D.Pa. 1962); American Airlines, Inc. v. Air Line Pilots Ass'n Int'l, 169 F.Supp. 777, 787 (S.D.N.Y.1958).

cretion in granting the interlocutory injunction. Flight Engineers Int'l Ass'n v. American Airlines, Inc., 303 F.2d 5, 11 (5th Cir. 1962); Meiselman v. Paramount Film Distrib. Corp., 180 F.2d 94, 97 (4th Cir. 1950). The district judge found that at numerous meetings the company sought to bargain with the union over the crew complement, but he described the union as having a "mandatory policy" on this issue. He concluded that this raised questions of law and fact justifying a temporary injunction pending trial of the case. We construe these findings and conclusions as a ruling that the union failed to negotiate in good faith as required by the Railway Labor Act.

■■ In Flight Engineers Int'l Ass'n v. American Airlines, Inc., 303 F.2d 5, 11 (5th Cir. 1962), Judge Brown defined the classic office of a preliminary injunction:

> "[To] preserve the status quo pending a judicious, calm and orderly judicial determination of [a] justiciable problem * * * So much so is it that on review of such an interlocutory order, we do not examine into the merits as such. The probable merits are looked to only insofar as they bear on the question whether the trial Court abused its discretion in granting interim relief."

On the record before us we cannot say that the district judge's findings are clearly erroneous or that he abused his discretion in granting a temporary injunction. Piedmont introduced evidence that the union would not bargain for a crew of less than three men because its bylaw forbade bargaining over that subject.[7] The bylaw does not in itself prove lack of good faith bargaining. Chicago, R. I. & P. Ry. v. Switchmen's Union, 292 F.2d 61, 67 (2d Cir. 1961), cert. denied, 370 U.S. 936, 82 S.Ct. 1578, 8 L.Ed.2d 806 (1962). But use of the bylaw as a reason for refusal to bargain on the issue of crew complement, in the face of the Federal Aviation Administration's certification of the B-737 for two-man crews, is not consistent with the Railway Labor Act's provisions requiring the parties "to exert every reasonable effort to make and maintain agreements concerning * * * working conditions, and to settle all disputes * * * in order to avoid any interruption of commerce." 45 U.S.C. § 152, First. See Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 721 n. 12, 65 S.Ct. 1289, 89 L.Ed. 1886 (1945); American Airlines, Inc. v. Air Line Pilots Ass'n Int'l, 169 F.Supp. 777, 793 (S.D.N.Y.1958).

■ At the trial on the merits for a permanent injunction the details of each bargaining session will be more fully developed by examination and cross-examination of the participants. From this the district judge will be in a position to make more definite findings of the historical facts. Consequently, what we have said is not intended to anticipate the outcome of the hearing for a permanent injunction. If that trial fails to establish lack of good faith bargaining, the injunction against the strike should be dissolved. Implicit in the Railway Labor Act is the right of employees to strike over a major dispute after the proceedings required by the Act have been exhausted. Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 378, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969). And even if the trial discloses a lack of good faith bar-

---

7. Section 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107, provides that a federal court shall not have jurisdiction to issue a temporary injunction "except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) * * *." The district court granted the preliminary injunction on the basis of documentary evidence supplemented by affidavits and cross-affidavits. We do not condone this departure from the statute's requirements. However, neither party on appeal has complained that the court denied the right to present or cross-examine witnesses. We decline to vacate the district court's order on this technical ground.

gaining, the injunction must not be a permanent bar to the strike. Provision should be made for its dissolution, whether or not agreement is reached, when the union complies with the Act. The union—no less than the company—has the right to resort to self-help when proceedings under the Act have been exhausted.

█ Piedmont's refusal of the National Mediation Board's proffer of arbitration denies the company an unqualified right to an injunction against the strike. In Brotherhood of R.R. Trainmen v. Toledo, P. & W. R.R., 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534 (1944), the Court held that § 8 of the Norris-LaGuardia Act[8] barred injunctive relief to an employer who had refused voluntary arbitration under the Railway Labor Act. The union's contention that *Toledo* should govern this case and erect an absolute bar to the injunction would be correct were it not for two distinctions. First, in *Toledo* there was no showing that the employees had failed to bargain in good faith. Consequently, proceedings under the Railway Labor Act had been exhausted, and the parties were free to engage in self-help without judicial restraint. A different situation is presented, however, when the employees strike before exhausting the Act's procedures, and the employer refuses arbitration. Then the provisions of the Railway Labor Act and § 8 of the Norris-LaGuardia Act must be reconciled and accommodated to protect the public interest in avoiding interruption of commerce.[9] Mr. Justice Stone's observations in Virginian Ry. v. System Fed'n No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937), about the importance of uninterrupted rail service apply with no less force to interstate transportation by air:

"More is involved than the settlement of a private controversy without appreciable consequences to the public. The peaceable settlement of labor controversies, especially where they may seriously impair the ability of an interstate rail carrier to perform its service to the public, is a matter of public concern. * * * Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved."

█ The "major purpose of Congress in passing the Railway Labor Act was 'to provide a machinery to prevent strikes.'" Texas & N. O. R.R. v. Brotherhood of Ry. & S.S. Clerks, 281 U.S. 548, 565, 50 S.Ct. 427, 432, 74 L.Ed. 1034 (1930). It is well settled that this purpose cannot be frustrated when one party fails to comply with the Act. Brotherhood of R.R. Trainmen v. Chicago R. & I. R.R., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957). Nor should this purpose be frustrated because both parties have failed to utilize the conciliatory machinery provided by the Act. Section 8 of the Norris-LaGuardia Act should then be read as requiring a condition or limitation upon the employer's right to an injunction and not as an absolute ban against the injunction. See Brotherhood of R.R. Trainmen v. Akron & B. R.R., 128 U.S.App.D.C. 59, 385 F.2d 581, 614 (dictum), cert. denied, 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed.2d 983 (1968).

The second distinction between this case and *Toledo* lies in the fact that here the union has not accepted arbitration, while in *Toledo* it did. The materiality

8. Section 8 of the Norris-LaGuardia Act [29 U.S.C. § 108] provides:
"No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

9. The district judge found the strike deprived 11 cities in North Carolina and 7 in Virginia of air service.

of this distinction is suggested by Brotherhood of Ry. & S.S. Clerks v. Florida E.C. Ry., 384 U.S. 238, 247 n. 8, 86 S.Ct. 1420, 16 L.Ed.2d 501 (1966). There the Court noted that neither party accepted arbitration before the strike, but nevertheless it allowed the employer conditional relief to which it would not have been entitled had the *Toledo* rule been applied.

The most appropriate condition to apply in this case is the maintenance of the status quo. This is the mandate of the Railway Labor Act in analogous situations. 45 U.S.C. §§ 152, Seventh; 155, First; 156; and 160. We, therefore, will require, as a condition to injunctive relief, maintenance of working conditions and established practices in existence before the strike, including three-pilot crews and the rate of pay in effect on July 20, 1969. Cf. Brotherhood of Locomotive Eng'rs v. Missouri-K.-T. R.R., 363 U.S. 528, 531, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960).

What we have said assumes that the controversy over the size of the crew is a major dispute. Both sides have adopted this description and apparently there has been no judicial inquiry of its aptness. Lurking in the shadows, however, is the suggestion made by the City of Roanoke, Virginia, *amicus curiae,* that the controversy is a minor dispute. Undoubtedly the differences over the crew complement started as a major dispute. However, on July 24, 1968, the parties entered into a supplemental agreement pending arbitration of the dispute between the union and United Air Lines. After arbitrators ruled that the B-737 should be flown by a three-man crew for the duration of United's basic contract with the union, Piedmont and the pilots differed about the meaning of their July 24, 1968 supplemental agreement.[10] The parties' designation of the dispute is not controlling, Hilbert v. Pennsylvania R.R., 290 F.2d 881, 885 (7th Cir.), cert. denied, 368 U.S. 900, 82 S.Ct. 174, 7 L.Ed.2d 96 (1961), so the district court should investigate the character of the controversy. Primary jurisdiction to determine whether the dispute is minor or major rests with the System Board of Adjustment. Flight Engineers Int'l Ass'n v. American Airlines, Inc., 303 F.2d 5, 11 (5th Cir. 1962). Therefore, the district court should not decide the case on its merits unless it is clearly shown, despite the supplemental agreement, that the controversy is still a major dispute. If there is a substantial question about the character of the dispute, the district court should condition injunctive relief upon prompt

---

10. The different interpretations placed upon the supplemental agreement are summarized in Ruby v. Piedmont Aviation, Inc., No. 1820–69 (D.D.C., Aug. 1, 1969):

"It is ALPA's [the union's] position that the Piedmont-ALPA B–737 agreement of July 24, 1968 was intended to and required Piedmont to continue operation of B–737 aircraft with a three pilot crew in the event of a decision for a three pilot crew·on United. ALPA further maintains that the issue of a two or three pilot crew complement has · accordingly been resolved by the United-ALPA Special Review Board decision for a three pilot crew, and that the only issues properly open for negotiation and mediation between the parties in Case No. A–8572 were rates of pay and duties for three pilot crew operations. ALPA asserts that it maintained such position in negotiations and mediation in Case No. A–8572.

"It is Piedmont's position that the July 24, 1968 B–737 agreement did not require Piedmont to continue with a three pilot crew in the event of such decision in United-ALPA proceedings, but required only that Piedmont and ALPA reopen negotiations on crew complement and rates of pay if the United-ALPA Special Review Board held for a three pilot crew. Piedmont asserts it maintained such position in negotiations and mediation in Case No. A–8572."

The court made no express finding that this dispute was either a major or a minor dispute. Instead it concluded that the parties had engaged in good faith negotiations, and refused a temporary injunction against Piedmont's use of a two-man crew.

submission of the controversy to the Board so that it may consider the threshold question of its own jurisdiction. Itasca Lodge 2029 v. Railway Express Agency, Inc., 391 F.2d 657, 665 (8th Cir. 1968). In this event, pending the Board's decision, the district court may continue the injunction to prevent both parties from altering the status quo. Brotherhood of Locomotive Eng'rs v. Missouri-K.-T. R.R., 363 U.S. 528, 531, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960).

The order of the district court is modified and affirmed.