**ILLINOIS CENTRAL RAILROAD COM-PANY, a Corporation, Plaintiff-Appellee,**

**and**

**United Transportation Union, a voluntary, unincorporated labor association, In-tervenor-Plaintiff-Appellee,**

**v.**

**BROTHERHOOD OF LOCOMOTIVE EN-GINEERS, an Unincorporated Associa-tion, et al., Defendants-Appellants.**

**No. 18504.**

United States Court of Appeals, Seventh Circuit.

May 14, 1971.

Rehearing Denied May 28, 1971.

Burke Williamson, Jack A. Williamson, Chicago, Ill., for defendants-appellants, Adams, Williamson & Turney, Chicago, Ill., of counsel.

John J. Naughton, Robert Mitten, Martin W. Fingerhut, Chicago, Ill., for appellees.

Before HASTINGS, Senior Circuit Judge, and FAIRCHILD and KERNER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Acting on a complaint filed by Illinois Central Railroad Company (IC), joined by plaintiff-intervenor United Transportation Union (UTU), the federal district court enjoined defendants Brotherhood of Locomotive Engineers and its officers and employees, acting in concert with the union (BLE), from striking against the IC because of a dispute arising from the rules governing the regulation of the engineers' extra list as fixed in a tripartite agreement executed January 27, 1960.

IC is a common carrier engaged in interstate commerce by railroad and is subject to the Railway Labor Act, Title 45, U.S.C.A. § 151 et seq.

UTU is the successor organization to the Brotherhood of Locomotive Firemen and Enginemen (BLF&E) and is the representative under the Railway Labor Act of the class or craft of locomotive firemen and enginemen of IC.

BLE is the representative under the Railway Labor Act of the class or craft of locomotive engineers of IC. The individual defendants are officers of BLE or employees of IC in the class or craft of locomotive engineers.

All parties agree that historically, as the district court found, on the IC and the railroad industry generally, an employee hired as a fireman may become qualified as an engineer after work experience and passing required examinations. Substantially all engineers come from the ranks of firemen. The term "enginemen's crafts" is used to include employees in the crafts of engineers and firemen.

The first regular work as an engineer performed by a fireman who has qualified to enter the ranks of engineers is usually an assignment to the engineers' extra list (also called engineers' extra board). Such a "promoted" fireman would generally be the fireman with most seniority on the particular seniority district. Engineers on the extra list perform service in place of absent regular engineers or when the IC adds assignments. If there is no vacancy and not an extra assignment, the men working on the extra list perform no service and receive no compensation. An employee taken from the engineers' extra list usually is returned to firing, at which time he may exercise his fireman's seniority to take the position held by a fireman on the seniority district with less seniority. Such a displaced employee may in turn displace another fireman with still less seniority. It is possible that by the time the displacement process is completed, the last displaced fireman may be left with no position.

The ebb and flow process between the crafts of firemen and engineers described above is initiated each time the engineers' extra list is increased or decreased.

The number of employees assigned to the engineers' extra list is regulated by certain rules relating, *inter alia,* to the mileage worked. The rules had their origin on the IC in the Chicago Joint Agreement of May 17, 1913, entered into by the chief executives of BLE and BLF&E. The rules were amended the last time in 1960 and appear in identical form in the engineers' and firemen's schedules. The two identical documents were both executed by the IC and respectively by authorized representatives of BLE and BLF&E.

The dispute underlying the instant action arose when BLE served upon the IC a notice under Section 6 of the Railway Labor Act, 45 U.S.C.A. § 156, requesting the following revision in the rules regulating the engineers' extra list:

"In regulating engineers' extra list, checking of the mileage and resultant adjustments, if any are called for, may be made *by or with the approval of the local chairman of the engineers* at any time, but must be made on the first, eleventh and twenty-first day of each calendar month, upon the basis of the average mileage for the preceding ten

days, using accumulated mileage as registered by engineers in book provided for that purpose as basis of calculation." (New material italicized.)

It is undisputed, and the district court so found, that the purpose of the Section 6 notice was to afford the Engineers' local representative the *exclusive* right to demand a check of the mileage accrued on the engineers' extra list on any day other than those days on which a check of the mileage was required to be made, *i. e.*, on days other than the first, eleventh, and twenty-first of each calendar month.

The Section 6 notice described was not served on the Firemen, and the Engineers have refused the requests of the IC and the Firemen to allow the Firemen to participate in the negotiations over the Engineers' notice. The position taken by the Engineers is that it alone has the exclusive right to bargain concerning the engineers' extra list and that any agreement the Firemen have dealing with the matter is illegal and of no effect.

A strike called by BLE against the IC for June 12, 1968 was subsequently averted after intervention by the National Mediation Board. On July 26, 1968, the General Chairman of the Firemen sent a letter to the IC reminding the railroad that the Firemen were a party to the 1960 agreement sought to be amended by BLE's Section 6 notice, concluding as follows:

"I am sure you are well aware of the fact that the agreement of January 27, 1960, between this carrier and the BLE is identical to the agreement of the same date entered into between the carrier and the BLF&E. Although the agreements were not signed jointly, any changes made in either of the agreements, by any of the parties thereto, could very well, as pointed out above, adversely affect employees represented by this organization.

"This will further serve to advise you that in the event the carrier enters into any agreement with the BLE changing provisions of the January 27,

1960, Agreement, we will have no alternative except to take whatever action we deem necessary to protect the rights of employees represented by the BLF&E. Therefore, I again suggest that you give serious consideration to arranging conference with me prior to making any changes in the agreement referred to herein."

Subsequently, the Mediation Board concluded its efforts and proffered arbitration. BLE declined the offer and on October 28, 1969 the Mediation Board terminated its services. More than two weeks later, on November 14, 1969, BLE notified the IC that it would not call a strike in connection with its Section 6 notice prior to December 2, 1969. On November 26, 1969, however, BLE notified the IC that it would not be bound by its earlier commitment not to strike before December 2, 1969.

The resulting instant litigation followed. On November 26, 1969, IC requested and obtained a temporary restraining order, which has been extended to the present time as permanent injunctive relief, enjoining BLE from striking against the IC over its Section 6 notice of December 19, 1967. BLE appealed. We affirm.

Upon consideration of the pleadings, oral and written evidence, briefs and oral argument by the parties, together with proposed findings and conclusions submitted by each of the parties, the district court entered 24 findings of fact and stated 7 conclusions of law. Based thereon it entered its judgment order favorable to plaintiffs and adverse to defendants.

In substance, the district court ultimately concluded that the threatened strike by the Engineers would be in violation of the Railway Labor Act because of the Engineers' failure and refusal to allow the Firemen to participate in the negotiation of the Engineers' Section 6 notice to amend the agreement of January 27, 1960 to which the Firemen were a party. Critical to this conclusion were three subsidiary conclusions reached by the court which we now consider.

## I

The district court first determined that a single agreement was entered into on January 27, 1960, among the IC, the Firemen and the Engineers, as reflected in its conclusion 2:

"2. Although reflected in two documents, the agreement of January 27, 1960 among the IC, the BLE and the BLF&E, insofar as said agreement relates to the rules regulating the engineers' extra list, constitutes one, tripartite agreement. The negotiations resulting in the agreement of January 27, 1960 were held jointly among the representatives of the IC the BLE and BLF&E. All parties to the negotiations treated the documents signed January 27, 1960 as a single agreement establishing the rules that were to govern the regulation of the engineers' extra list. Following the execution of the agreement the parties continued to negotiate jointly in amending and interpreting the agreement of January 27, 1960."

The findings of fact in support of this conclusion were drawn from the uncontradicted testimony of representatives of the IC and the Firemen who served as chief negotiators during the bargaining sessions that led to the January 27, 1960 agreement. The trial court further reviewed ways in which the extra list is regulated, i. e., on the mileage basis or a so-called "common-sense adjustment." Also considered was the history of the development of the rules beginning with the Chicago Joint Agreement of May 17, 1913 and continuing to date, including the joint application of the 1960 rules subsequent to their adoption.

In substance, defendants do not charge that the trial court's findings are clearly erroneous but rather contend they are irrelevant or immaterial as a matter of law or show on their face that the two agreements are indeed separate and not tripartite. Further, it is urged that the alleged triparty agreement states no restriction to its amendment.

■ We are inclined to the view that such findings of fact on which the trial court's conclusion was based come within the purview of Rule 52(a), Federal Rules of Civil Procedure, Title 28, U.S.C.A. As the Supreme Court stated in Transportation-Communication Emp. Union v. U.P.R. Co., 385 U.S. 157, at 160–161, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966): "A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts which control such private contracts. * * * In order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." In Chicago, M., St. P. & P. R. Co. v. Brotherhood of Loc. Firemen & Enginemen, 7 Cir., 397 F.2d 541, 545–546 (1968), cert. denied, 393 U.S. 1022, 89 S.Ct. 630, 21 L.Ed.2d 566 this court recognized the same principles of contract construction.

■ The district court properly allowed and considered the introduction of oral testimony and written exhibits as evidence of the intention of the parties to enter into a single agreement on January 27, 1960. Having reviewed this evidence, we hold that the trial court did not err in its findings of fact and resulting conclusion.

## II

■ The district court then found and held that the Firemen had a bargainable interest in the rules regulating the engineers' extra list. The Engineers contend that this conclusion is contrary to the Chicago Joint Agreement and accordingly is incorrect.

In its conclusion No. 5, the district court resolved this question in the following manner:

"5. The BLE takes the position that even if a single agreement was made on January 27, 1960, it is void and of no effect with respect to the firemen's union since the BLE is the

duly certified representative of employees in the craft of engineers, and pursuant to such certification it alone has the right to bargain concerning the rules regulating the engineers' extra list. If the subject matter of the engineers' extra list related solely to engineers, the principle of exclusive representation would indicate that the Firemen could have no bargainable interest in the subject and the BLE would have the right to demand that the IC deal with it alone. However, a consideration of the history of the relationship of the parties hereto, clearly shows that the subject matter of the Section 6 notice, the engineers' extra list, is a subject which falls within the area of joint interest to employees in the craft of firemen as well as the craft of engineers. Thus, for more than fifty years, the subject of the engineers' extra list has been the subject of joint negotiations and agreement among the IC, the BLE and the BLF&E. Furthermore, even if it were determined that the BLE was the only duly certified representative of the IC employees on the extra list, the firemen, as a result of the ebb and flow between the crafts, would still have an important economic stake in the rules regulating the extra list. Under such circumstances, the Firemen have a bargainable interest in the engineers' extra list. Brotherhood of Locomotive Engineers, et al. v. National Mediation Board, 133 U.S.App.D.C. 326, 410 F.2d 1025 (1969), cert. den., 396 U.S. 878, 90 S.Ct. 149, 24 L.Ed.2d 136; Brotherhood of Locomotive Firemen and Enginemen v. Seaboard Coast Line R. R., 413 F.2d 19 (5th Cir. 1969), cert. den., 396 U.S. 963, 90 S.Ct. 432, 24 L.Ed.2d 426."

In addition to the above two cases cited by the district court relative to the interrelationship or interplay between the crafts of firemen and engineers, this court, in Chicago, M., St. P. & P. R. Co. v. Brotherhood of Loc. Firemen & Enginemen, 7 Cir., 397 F.2d 541 (1968) stated at 544:

"It has been the custom for employees hired as firemen, after training, education, experience and examination required by the railroad, to be promoted from firemen to engineers. After such promotion, however, employees serve as engineers only at such times as engineer openings are available, by virtue of seniority rules, and when no such openings are available, they serve as firemen. Upon such promotion, when the needs of the service required, firemen would serve first on the engineers' 'Extra Board' and thereafter, when their seniority warranted, would receive permanent assignments as engineers. Engineers on the extra board had no permanent assignments but served when a regularly assigned engineer was unavailable for service due to sickness, accident, holiday, vacation, or other reasons.

"Thus, for many years the interplay [2] between crafts of engineers and firemen, the promotion and demotion of engineers and firemen, their dual seniority rights, the ebb and flow or movement from the firemen's craft up to the engineers' craft, have been controlled by rules relating to extra boards." [1]

Upon consideration of the record before us and cases cited by all parties, we have concluded that the conclusion reached by the district court is not contrary to the Chicago Joint Agreement. We accept the rationale of the district court that under the circumstances found present in the instant case, "even if it were determined that the BLE was the only duly certified representative of the IC employees on the extra list, the firemen, as a result of the ebb and flow be-

1. Footnote 2 in the above quoted citation reads: "This interplay has been the subject of a number of decisions. See: General Committee of Adjustment of B.L.E. v. Missouri-K-T-R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76; Hooser v. Baltimore & Ohio R. Co., 7 Cir., 279 F.2d 197; McElroy v. Terminal R. R. Ass'n of St. Louis, 7 Cir., 392 F.2d 966."

tween the crafts, would still have an important economic stake in the rules regulating the extra list [and] * * * a bargainable interest in the engineers' extra list." We find no error in reaching this conclusion.

## III

█ Finally, the district court found and held that the failure and refusal of the Engineers to allow the Firemen to participate in the negotiation of the Section 6 notice of December 19, 1967 was in violation of the Railway Labor Act with respect to such notice.

This action is reflected in the trial court's conclusions Nos. 3 and 4, as follows:

"3. The Section 6 notice of December 19, 1967 discloses an attempt by the BLE to amend the agreement of January 27, 1960 among the IC, the BLE and the BLF&E. This Section 6 notice cannot be progressed in the absence of the Firemen, and the refusal of the BLE to allow the Firemen to participate in the negotiations initiated by its notice is in violation of Section 6 of the Railway Labor Act (45 U.S.C. § 156) which requires that conferences be held among all 'representatives of the parties interested in such intended changes', and in viola-

tion of Section 2, First and Second of the Railway Labor Act which require that the parties 'exert every reasonable effort to make and maintain agreements' (45 U.S.C. § 152, First), and that all disputes between a carrier and its employees 'be considered, and, if possible, decided with all expedition, in conference between representatives designated and authorized to so confer.' (45 U.S.C. § 152, Second)."

"4. Furthermore, any change in the January 27, 1960 agreement, insofar as it relates to rules governing the engineers' extra list, which would be negotiated and agreed upon between the BLE and the IC without notice to and participation by the BLF&E would have the effect of changing the Firemen's agreement in violation of Section 2, Seventh of the Railway Labor Act which prvoides that: 'No carrier, its officers or agents shall change the rates of pay, rules or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements, or in Section 156 of this title.' (45 U.S.C. § 152, Seventh). The jurisdiction of the federal courts to compel compliance with the procedures set forth by the Railway Labor Act for changing such agreements is well established." [2]

2. The general purposes of the Railway Labor Act as stated in Section 2, § 151a, read in relevant part:

"* * * (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; * * (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; * * *."

The general duties imposed upon the carriers and employees to settle disputes, as further stated in Section 2, § 152, read in relevant part:

"First. It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application

of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

"Second. All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.

\* \* \* \* \*

"Seventh. No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

Again, upon consideration of the record and the authorities cited by the parties, we are left with the fixed conclusion that the district court's determination that the attempted procedure of the Engineers by way of its Section 6 notice was in violation of the Railway Labor Act was proper and was mandated by the clear language of the cited portions of the Act itself. Furthermore, it seems but the logical step flowing from its prior conclusions that the January 27, 1960 agreement was a "single agreement" in which the Firemen had a "bargainable interest."

Any subsidiary disputed contentions with reference to the views of the National Mediation Board with respect to the validity of the instant Section 6 notice have been laid to rest by the Supreme Court in Detroit & Toledo Shore Line v. United Transportation Union, 396 U.S. 142, where, at, 158–159, 90 S.Ct. 294, 303–304, 24 L.Ed.2d 325 (1969), the Court stated: "Finally, the Shore Line points out, quite correctly, that its position on § 6 is identical to that taken by the National Mediation Board in several of its Annual Reports. However, the Mediation Board has no adjudicatory authority with regard to major disputes, nor has it a mandate to issue regulations construing the Act generally."

## IV

■ The BLE contends that the invalidity of the Section 6 notice depends upon the district court's determination of a jurisdictional dispute between the Firemen and the Engineers over whether the subject matter of the engineers' extra list relates solely to engineers and that in making such determination, the court exceeded its jurisdiction. See the court's final conclusion No. 5, *supra*. We disagree.

While it is true that jurisdictional disputes between rival unions are not justiciable in federal court, General Committee of Adjustment v. Missouri-K.-T. R. R., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943), in the instant case, there was no jurisdictional dispute unless it was created by the filing of the Engineers' Section 6 notice. The district court properly found, as a matter of fact, that the rival unions had long jointly negotiated the engineers' extra list and had entered into a single tripartite agreement covering such list. They, therefore, had joint jurisdiction over the subject matter, prior to the filing of the notice.

■ If the notice transformed this case into a jurisdictional dispute, it was specifically denied by the Engineers' Answer in the court below. They cannot now change the theory of their case in our court. See, Wagner v. Retail Credit Company, 7 Cir., 338 F.2d 598, 601–602 (1964). Moreover, if the Engineers are convinced that the engineers' extra list should now be within their exclusive jurisdiction, there is nothing in the granting of the permanent injunction that would prevent their following the proper procedures under the Railway Labor Act to establish such jurisdiction.

The procedure in changing rates of pay, rules and working conditions as stated in Section 6, § 156, reads:
"Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board."

Under the circumstances found present here, we cannot escape the conclusion that the district court was correct in determining that the Firemen be given the right to participate in the negotiations of the subject Section 6 notice.

V

In its final conclusion No. 6, the district court summarized its prior findings and held that the threatened strike by the Engineers would be unlawful and enjoinable, notwithstanding the provisions of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–115, which conclusion reads:

"6. The Court finds that the agreement of January 27, 1960 is valid and constitutes a single agreement among the IC, the BLE and the BLF&E insofar as said agreement pertains to the rules regulating the engineers' extra list. The BLE's Section 6 notice of December 19, 1967 purports to amend that agreement without allowing the BLF&E, which is a party to the above agreement, to participate in the required negotiations. Accordingly, the BLE's Section 6 notice of December 19, 1967, is illegal, and the BLE has not exhausted the procedures of the Railway Labor Act with respect to its notice. The threatened strike by the Engineers would therefor be unlawful and enjoinable, notwithstanding the provisions of the Norris-LaGuardia Act (29 U.S.C. §§ 101–115). Piedmont Aviation Co. v. Air Line Pilots Ass'n., 416 F.2d 633, 636 (4th Cir. 1969); Brotherhood of Locomotive Trainmen v. Akron & Barberton Belt R. R., et al., 128 U.S.App.D.C. 59, 385 F.2d 581, 613 (1967), cert. den. Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostock R. Co., 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed.2d 983; Manning v. American Airlines, 329 F.2d 32, 34 (2nd Cir. 1964), cert. den. 379 U.S. 817, 85 S.Ct. 33, 13 L.Ed. 2d 29."

We agree with the district court's holding that the threatened Engineers' strike is enjoinable notwithstanding the provisions of the Norris-LaGuardia Act, *supra*. It has long been settled that in railway labor disputes, there must be an accommodation between the Railway Labor Act and the Norris-LaGuardia Act so that the obvious purpose in the enactment of each is preserved. Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., 353 U.S. 30, 40, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957). The injunction granted in the instant case does no more than compel compliance by the Engineers with the orderly dispute settlement procedures established by the Railway Labor Act and was well within the district court's jurisdiction. Brotherhood of Railroad Trainmen v. Akron & Barberton Belt R. R., 128 U.S.App.D.C. 59, 385 F.2d 581, 613 (1967), cert. denied, Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostock R. Co., 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed. 2d 983.

For the foregoing reasons, the decision of the district court will be affirmed in all respects.

Affirmed.