**PIEDMONT AVIATION, INC., a Corporation, Plaintiff,**

v.

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, an Unincorporated Association, Defendant.**

**No. C-154-WS-69.**

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Aug. 11, 1972.

J. W. Alexander, Jr., and Ernest W. Machen, Jr., Charlotte, N. C., for plaintiff.

Charles T. Boyd, Greensboro, N. C., for defendant.

## MEMORANDUM OPINION

EUGENE A. GORDON, Chief Judge.

This case arises from events first occurring in 1965. In that year the plaintiff, Piedmont Aviation, Inc. (Airline), decided to buy twelve Boeing 737 twin-turbojet aircraft (737). In the following year the defendant, the Air Line Pilots Association, International (Alpa), revised its crew complement policy to provide for a three-pilot crew on all turbojet aircraft certified after 1966. Alpa made the revision in spite of findings by the Federal Aviation Administration that the 737's can be safely flown with a two-pilot crew complement.

Alpa contends that the revision in the crew complement policy was made solely on safety considerations and that the FAA's findings are not binding because the FAA is directed to maintain only minimum safety requirements. The revision is purported to be binding on all of its members and prohibits them from operating any turbojet aircraft with less than a three-pilot crew.

Airlines all over the United States whose pilots were members of Alpa began negotiations with Alpa on this question. The plaintiff-Airline entered into extensive bargaining with Alpa, and on July 24, 1968, the parties entered into a comprehensive collective agreement which settled such issues as longevity pay, salaries, flight scheduling, vacations, etc., for all aircraft except the 737. Also on July 24, the parties entered into a supplemental agreement dealing with the crew complement of the 737's. In this agreement, the Airline agreed to allow three-pilot crews for the 737's and established the rates of pay for these officers until a decision on the same issue was reached by United Airlines and Alpa who were in the process of arbitrating the issue before a Special Review Board. The supplemental agreement states:

"Rates for a 2-man operation (80 hours) effective 1/1/69 based on the assumption that United procedures or arbitration results in a decision for a 2-man operation: (rates omitted)

\* \* \* \* \* \*

"In the event the United arbitration or procedures result in a decision for a 3-man operation, the parties agree to reopen negotiation under the provisions of the Railway Labor Act for 3-man operations and rates of pay beginning January 1, 1969."

United subsequently agreed to the three-pilot crews on its 737's and the plaintiff and Alpa reopened negotiations. Alpa contends that the negotiations were only to settle working conditions, duties, training, and rates of pay because the question of the crew complement had been settled by the United decision. The plaintiff-Airline, however, contends that the supplemental agreement did not mean that they were bound to follow the United decision and that the parties had merely recessed. Further negotiations, including the aid of the National Mediation Board, proved fruitless and the Airline announced that it was discontinuing the three-pilot crews.

On July 21, 1969, the plaintiff-Airline attempted two-pilot operation of the 737's. Alpa asked the federal district court in Washington, D. C., to grant a temporary restraining order to prevent the two-pilot operation, but the court refused to grant the temporary injunction on the grounds that Alpa did not show a reasonable probability of success at the final hearing of the matter. Ruby v. Piedmont Aviation, Inc., No. 1820–69 (D.D.C. August 1, 1969).

Alpa had already called a strike of all pilots employed by the plaintiff-Airline, and on August 5, 1969, the Airline sought injunctive relief in this Court on the grounds that Alpa had not bargained in good faith as required by the Railway Labor Act, 45 U.S.C. § 152, First. The Court granted the requested relief on August 14, 1969, upon a finding that irreparable injury was occurring to the general public because of the strike. Alpa was ordered to cancel the strike and to maintain the status quo of two-pilot crews until the case could be decided on its merits. The temporary injunction was affirmed on appeal but modified to the extent that the status quo was to be maintained with three-pilot crews. Piedmont Aviation, Inc. v. Air Line Pilots Association, International, 416 F.2d 633 (4th Cir.1969), cert. denied 397 U.S. 926, 90 S.Ct. 924, 25 L.Ed.2d 105 (1970), reh. denied 398 U.S. 915, 90 S. Ct. 1687, 26 L.Ed.2d 80 (1970).

■ Through these preliminary stages of the litigation, both parties apparently assumed that the dispute was a major dispute and, therefore, within the district court's jurisdiction as opposed to a minor dispute which is within the exclusive jurisdiction of the System Board of Adjustment. However, in its opinion affirming the temporary injunction the Fourth Circuit Court of Appeals indicated that the supplemental agreement of July 24 might have changed the dispute from a major dispute to a minor one, and even though the parties thought it was a major dispute, their designation is not controlling. Piedmont Aviation, Inc. v. Air Line Pilots Association, International, *supra*, 416 F.2d at 639. The Court further directed that this Court,

"[S]hould not decide the case on its merits unless it is clearly shown, despite the supplemental agreement, that the controversy is still a major dispute. If there is a *substantial question* about the character of the dispute, the district court should condition injunctive relief upon prompt submission of the controversy to the

Board so that it may consider the threshold question of its own jurisdiction." 416 F.2d at 639. (Emphasis added)

This Court must therefore decide whether the plaintiff-Airline has clearly shown that the controversy is still a major dispute. In making this decision it is much easier to define major and minor disputes than it is to apply those definitions to the facts of this case.

■ A major dispute is one which arises over the formation of collective agreements or where there is no such agreement. A minor dispute contemplates the existence of a collective agreement and no effort is made to bring about a new agreement; the dispute arises over the meaning of the agreement or the proper application of the agreement. Elgin, Joliet & Eastern R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1944).

The Airline contends that the dispute is a major one because the parties had been negotiating without success on this issue and that they merely recessed to await the result of the bargaining between Alpa and United. Therefore, since no agreement had been reached, the crew complement would be the subject of an original dispute which has not been a part of any agreement. The Airline supports this argument by claiming that Alpa never believed that an agreement had been reached as indicated by its letter asking to reopen negotiations following the United decision. The Airline also points to the fact that Alpa repeatedly called the dispute a major one and it has waited for three and one-half years before trying to enforce the "agreement" before the System Board of Adjustment. Finally, the Airline argues that if Alpa is correct in contending that the dispute is a minor one, then Alpa is admitting that their strike was illegal. Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957).

Alpa, in support of its argument that the dispute is a minor dispute, contends

that the July 24 supplemental agreement was a compromise to the dispute in that the parties would abide by the United arbitration. Alpa therefore contends that the real dispute is the interpretation that is to be given to the side agreement of July 24 and such interpretation is clearly the function of the System Board of Adjustment. Alpa further points out that the supplemental agreement obviously gave the Airline a two-pilot crew if the United arbitration had ended in United getting two-pilot crews, and therefore, Alpa contends that it follows that the Airline should also be bound to a three-pilot crew following United's acceptance of three-pilot crews.

■ Turning to decisions which have dealt with this problem, several cases hold that where the company asserts a defense to the union's request for injunctive relief and that defense is based on the terms of the existing collective-bargaining agreement, the dispute cannot be a major dispute unless the defense is obviously so insubstantial as to warrant the inference that it is raised with an intent to circumvent the Railway Labor Act. Airlines Stewards & Stewardesses Association v. Caribbean Atlantic Airlines, Inc., 412 F.2d 289 (1st Cir.1969); Southern Ry. Co. v. Brotherhood of Locomotice Firemen and Enginemen, 127 U.S.App.D.C. 371, 384 F.2d 323 (1967).

The facts before this Court are obviously different from the facts of the two cases cited above in that it is the plaintiff-Airline which sought the injunctive relief and the Airline is denying that any permanent agreement was ever reached. However, the Airline did enter into an agreement which, under the interpretation of the defendant-Alpa, is of a permanent nature. The Airline contests this interpretation and is asking the Court to accept its own interpretation of the agreement. Since the interpretation of existing collective-bargaining agreements is clearly the function of the System Board of Adjustment, 45 U.S.C. § 184; Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.

Ct. 577, 94 L.Ed. 795 (1950), and because the dispute which led to the strike and the litigation in this Court arose over the interpretation each party places on the supplemental agreement, it would seem that the System Board of Adjustment should interpret that agreement.

The case of Seaboard World Airlines, Inc. v. Transport Workers Union, 425 F.2d 1086 (2nd Cir. 1970), involves injunctive relief sought by the Airline to prevent a strike by airline navigators because of the refusal of the Airline to reopen negotiations under an agreement which stated that the agreement could be reopened only after ten years had elapsed. The Court, in an opinion by Judge Friendly, held that there was no reason to submit the dispute to the Board of Adjustment because the wording of the agreement left no doubt as to its meaning. In the instant case just the opposite is true; the disputed language is ambiguous and the parties are taking radically different positions on its meaning.

In the case of Ruby v. TACA International Airlines, S. A., 439 F.2d 1359 (5th Cir. 1971), the Airline tried to relocate the pilots' home base from New Orleans to El Salvador; under the laws of El Salvador, Alpa's collective-bargaining agreement with the Airline would have been a nullity. The district court granted Alpa's request for an injunction and held that it had jurisdiction over the matter because the controversy was a major dispute.

In affirming the district court's order, the Court of Appeals for the Fifth Circuit rejected TACA's argument that the relocation of the pilots to El Salvador is authorized by provisions of the collective-bargaining agreement delineating conditions under which pilots may be transferred from one base to another. The Court held that this provision could not reasonably be read to authorize the removal of all pilots to El Salvador and was a unilateral attempt to terminate the existing collective-bargaining agreement. The Court gave the following cri-

teria for determining whether a dispute is major or minor:

"[A] dispute is a major dispute if it concerns an action by a carrier which . . . is not arguably authorized by the existing agreement between the parties." 439 F.2d at 1363.

Applying this criteria to the facts of the instant case, the interpretation that both parties give to the supplemental agreement *is* arguably authorized by the agreement and therefore cannot be a major dispute. *See,* Northwest Airlines, Inc. v. Air Line Pilots Association, International, 442 F.2d 246 (8th Cir. 1970), *aff'd on rehearing,* 442 F.2d 251 (8th Cir. 1971), *cert. denied,* 404 U. S. 871, 92 S.Ct. 70, 30 L.Ed.2d 116 (1971).

This Court therefore concludes that it has not been "clearly shown" that the controversy is still a major dispute and the interpretation of the supplemental agreement of July 24, 1968, must be turned over to the System Board of Adjustment. While the dispute over the number of pilots that are needed to fly the 737's was certainly a major dispute prior to the July 24 agreement, the Court is not convinced that the agreement did not change the character of the dispute. In order for this Court to determine that it does have jurisdiction over the dispute, the Court would have to accept the Airline's interpretation of the agreement to the exclusion of Alpa's interpretation.

To even attempt such an interpretation would be clearly improper. Statutory and case law are clear that disputes over the interpretation of agreements must be submitted to the System Board of Adjustment. Therefore, it is ordered that the parties immediately submit to the System Board of Adjustment the supplemental agreement of July 24, 1968, for interpretation as to the status of the parties following the United Airlines decision to use three pilots on their 737's.

In order to leave the System Board of Adjustment entirely free to interpret the agreement as it finds the facts, this Court has attempted to give no indication as to how it feels the agreement should be interpreted. The Court will, however, retain jurisdiction pending a decision by the System Board of Adjustment. When the proper interpretation of the agreement has been made, the Court will then be in a position to determine if there have been any violations of the Railway Labor Act. Order of Ry. Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946); Northwest Airlines, Inc. v. Air Line Pilots Association, International, *supra.*

Accordingly, counsel for the defendant will forthwith prepare and submit to the Court an order, first presenting same to counsel for the plaintiff for approval as to form.